Cheri BALLARD, et al., Appellants,

v.

**CITY OF CREVE COEUR, and American Traffic Solutions, Inc., Respondents.**

**No. ED 98320.**

Missouri Court of Appeals,
Eastern District,
Division Four.

Oct. 1, 2013.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 23, 2014.

Application for Transfer Denied Feb. 25, 2014.

John G. Simon, Ryan A. Keane, The Simon Law Firm, PC, St. Louis, Missouri, for Appellant.

W. Dudley McCarter, Timothy J. Reichardt, Behr, McCarter & Potter, PC, Carl Lumley, Curtis, Heinz, Garrett & O'Keefe, PC, St. Louis, MO, for Respondent City of and Creve Coeur.

Jane E. Dueker, Nicholas G. Grey, Stinson Morrison Hecker LLP, St. Louis, MO, for Respondent American Traffic Solutions, Inc.

KURT S. ODENWALD, Judge.

### Introduction

Appellants Cheri Ballard ("Ballard"), Jay Baur ("Baur"), and Stephen and Brenda Arnold ("the Arnolds") (collectively, "Appellants") appeal from the judgment of the trial court granting a joint motion to dismiss filed by Respondents City of Creve Coeur ("Creve Coeur") and American Traffic Solutions, Inc. ("ATS") (collectively, "Respondents").[1] Appellants received violation notices from Creve Coeur alleging that they had violated Creve Coeur's red light camera ordinance ("the Ordinance") and challenged the Ordinance in a six-count, purported class action petition. Appellants sought declaratory judgment regarding the Ordinance's constitutionality and conformity with state law, as well as Creve Coeur's authority to enact the Ordinance. Appellants also claimed the Ordinance violated procedural due process and the privilege against self-incrimination, and they alleged claims of unjust enrichment and civil conspiracy by Creve Coeur and ATS.

Creve Coeur and ATS filed a joint motion to dismiss, which was granted by the trial court. In its judgment, the trial court held that the Arnolds and Baur could not bring a claim for equitable relief when they had an adequate remedy at law in their municipal court proceeding. The trial court also held that Ballard could not raise her constitutional claims due to the doctrines of standing, waiver, and estoppel. The trial court then proceeded to address

---

1. Respondents filed a joint motion to dismiss Appellants' appeal in this matter, which was taken with the case. Respondents alleged that Appellants failed to preserve sufficient issues for review by this Court to allow for reversal of the trial court's judgment. We hereby deny Respondents' motion to dismiss Appellants' appeal.

the substantive issues raised by Appellants' constitutional claims, finding the Ordinance did not violate the Missouri constitution. The trial court also held that the Ordinance was properly enacted by Creve Coeur and was not in conflict with state law. Finally, the trial court found that Ballard could not state a claim for unjust enrichment or recover under a theory of civil conspiracy. All of Appellants' claims were dismissed with prejudice.

Appellants now appeal the trial court's dismissal of their claims, alleging three points of error. First, Appellants claim that the trial court erred in dismissing their petition because the Ordinance is an unconstitutional and invalid exercise of Creve Coeur's police power. Appellants next argue that the trial court erred in dismissing Ballard's constitutional claims on the grounds of standing, waiver, and estoppel, and assert that the trial court erred in dismissing the Arnolds' and Baur's claims because they do not have an adequate remedy at law. Finally, Appellants aver that the trial court erred in dismissing their claims for unjust enrichment because they properly pleaded the elements of unjust enrichment and their claims are not barred by the voluntary payment doctrine. Appellants do not challenge in this appeal the trial court's substantive judgment and rulings related to their constitutional claims, conflict with state law claims, or civil conspiracy claim. Accordingly, we do not address those rulings in this appeal.[2]

Because the Arnolds and Baur have an adequate remedy at law in their municipal court proceeding, we affirm the trial court's judgment dismissing their claims. With regard to Ballard, we reverse the trial court's judgment declaring that the Ordinance was properly enacted in accordance with Creve Coeur's police power for regulating public safety. Ballard pleaded that the Ordinance was enacted in order to generate revenue rather than ensure public safety. Whether the Ordinance is a revenue-generating mechanism advanced under the guise of Creve Coeur's police power is a fact question that is not appropriate for resolution on a motion to dismiss. We remand this portion of the trial court's judgment for proceedings consistent with this opinion. We affirm the trial court's judgment in all other respects.

*Factual and Procedural History*

Section 315.120 of the Creve Coeur Municipal Code authorizes the use of red light cameras to detect "violations of public safety at intersections." Under the Ordinance, one commits the infraction of violation of public safety at an intersection "when a motor vehicle of which that person is an owner is present in an intersection while the traffic control signal for the intersection is emitting a steady red signal ... unless the motor vehicle is in the process of making a lawful turn...." The Ordinance places strict liability on the owner of the vehicle, without regard to whether the owner was operating the vehicle at the time of the violation. However,

---

**2.** The dissent cites concern with the majority opinion to the extent the majority opinion does not find a conflict between Creve Couer's ordinance and state law. The majority opinion neither holds that the ordinance at issue is in conflict with state law, nor is consistent with state law. We do not address the issue of conflict between Creve Couer's ordinance and state law because that issue has not been raised at any time in this appeal by the parties. As an error correcting court, we may address only those alleged errors of law preserved and raised by the parties on appeal, and we will not *sua sponte* address non-jurisdictional issues that are neither presented nor argued by the parties to the appeal. Our unwillingness to address allegations of conflict with state law reflects nothing more than our adherence to the express rules of appellate procedure.

the Ordinance provides limited justifications that will excuse the infraction upon the submission of a sufficient sworn statement by the owner.

Upon review of the recorded images indicating an infraction under the Ordinance, a Creve Coeur police officer completes a citation, which is mailed to the owner of the vehicle. The Ordinance provides that the citation shall direct the owner to respond within 30 days by either paying the specified fine or by providing a sworn statement that sufficiently explains why one of the enumerated justifications is applicable. The Ordinance does not set the amount of the fine, but rather states that the fine shall be set by the municipal court and that under no circumstances will a person be imprisoned for violating the Ordinance.

In December 2008, Ballard received a Notice of Violation for allegedly committing a "Violation of Public Safety at Intersection." The Notice of Violation directed Ballard to pay a $100 fine by January 20, 2009. Ballard subsequently paid the $100 fine. In December 2009 and February 2011, respectively, the Arnolds and Baur also received violation notices for allegedly committing a "Violation of Public Safety at Intersection" under the Ordinance. Neither the Arnolds nor Baur paid the $100 fine.

In October 2011, Appellants filed an amended class action petition challenging the Ordinance on several grounds. In the petition, Ballard sought to represent a subclass of plaintiffs who received a citation pursuant to the Ordinance and paid the fine. The Arnolds and Baur sought to represent a subclass of plaintiffs who received a citation, did not pay the fine, and have at least one outstanding citation.[3] The petition alleged six counts: declarato-

ry judgment (Count I); unjust enrichment against Creve Coeur on behalf of Ballard (Count II); violation of the self-incrimination clause of Article I, Section 19 of the Missouri Constitution against Creve Coeur (Count III); violation of the due process clause of Article I, Section 10 of the Missouri Constitution against Creve Coeur (Count IV); civil conspiracy against Creve Coeur and ATS (Count V); and unjust enrichment against ATS on behalf of Ballard (Count VI). All plaintiffs sought a declaration under Count I that the Ordinance was void, invalid, and/or unconstitutional. All plaintiffs further sought equitable relief under Counts III and IV and monetary damages under Counts III, IV, and V. Ballard sought restitution from Creve Coeur and ATS under Counts II and VI.

In response to Appellants' petition, Respondents filed a joint motion to dismiss, which was granted by the trial court. In its judgment, the trial court dismissed the Arnolds' and Baur's claims under Counts I, III, IV, and V because they have an adequate remedy at law in their municipal court proceedings. The trial court also dismissed with prejudice the Arnolds' and Baur's claims under Counts III, IV, and V for failure to state a claim for damages.

The trial court further held that Ballard lacked standing to challenge the constitutionality of the Ordinance when she did not avail herself of the procedure provided under the Ordinance, that she waived her constitutional claims by not raising them in municipal court, and that she was estopped from challenging the constitutionality of the judgment imposed when she voluntarily paid it. Therefore, Ballard's claims under Counts I, III, and IV were dismissed with prejudice.

---

**3.** The trial court never certified the proposed classes, and Appellants have not raised any issues relating to class certification in this appeal.

The trial court then addressed the substantive issues raised by the petition. Relying solely on this Court's opinion in *City of Creve Coeur v. Nottebrok*, 356 S.W.3d 252 (Mo.App.E.D.2011), the trial court declared that the Ordinance did not violate the procedural due process protections of Article I, Section 10 of the Missouri Constitution or the privilege against self-incrimination as guaranteed by Article I, Section 19 of the Missouri Constitution. Therefore, Counts III and IV were dismissed with prejudice, along with Count I as it related to the constitutionality of the Ordinance.

With regard to the remainder of Appellants' request for declaratory judgment, the trial court found that Creve Coeur possessed constitutional and legislative authority to enact the Ordinance and that the Ordinance was properly enacted pursuant to Creve Coeur's police power for regulating public safety. The trial court also found the Ordinance was not in conflict with state law and dismissed Count I with prejudice.

The trial court also dismissed with prejudice Ballard's claim for unjust enrichment under Counts II and VI, finding that the petition failed to state a claim of unjust enrichment against Creve Coeur and ATS, there were no unjust circumstances, and the voluntary payment doctrine barred Ballard's recovery. The trial court further dismissed with prejudice Ballard's claims against Creve Coeur in Counts III, IV, and V, finding that Creve Coeur is immune from tort liability arising from its performance of government functions. Finally, the trial court found that ATS was protected by the governmental contractor defense and dismissed with prejudice Counts V and VI as to ATS. This appeal follows.

*Points on Appeal*

Appellants raise only three points on appeal. First, Appellants argue the trial court erred in declaring the Ordinance valid because the Ordinance is an unconstitutional and invalid exercise of Creve Coeur's police power. In their second point on appeal, Appellants argue that the trial court erred in dismissing Ballard's constitutional claims on the bases of standing, waiver, and estoppel. Within this point, Appellants also contend the trial court erred in dismissing the equitable claims of the Arnolds and Baur because they have an adequate remedy at law. In their third and final point, Appellants aver that the trial court erred in dismissing Ballard's claims for unjust enrichment because she properly pleaded the elements of unjust enrichment and her claims are not barred by the voluntary payment doctrine.

*Standard of Review*

Review of a trial court's order granting a motion to dismiss is *de novo*. *Fenlon v. Union Elec. Co.*, 266 S.W.3d 852, 854 (Mo.App.E.D.2008) (citing *Gibbons v. J. Nuckolls, Inc.*, 216 S.W.3d 667, 669 (Mo. banc 2007)). A motion to dismiss tests only the adequacy of a plaintiff's petition to determine whether the facts alleged meet the elements of a recognized cause of action or of a cause that might be adopted in that case. *Otte v. Edwards*, 370 S.W.3d 898, 900 (Mo.App.E.D.2012). When reviewing a motion to dismiss for failure to state a claim, this Court assumes that all facts in the plaintiff's petition are true, and we must give the plaintiff the benefit of every favorable inference that may be reasonably drawn from the facts pleaded. *Rook v. Pub. Sch. Ret. Sys. of City of St. Louis*, 593 S.W.2d 905, 906 (Mo.App.E.D.1980).

*Discussion*

Initially, we note that Appellants have not appealed several of the trial court's holdings. Appellants admittedly have cho-

sen not to appeal the trial court's judgment with regard to their allegations in Count I and Count III related to a violation of the privilege against self-incrimination under Article I, Section 19 of the Missouri Constitution. Appellants also admit that they do not appeal the trial court's judgment dismissing their civil conspiracy allegations in Count V.

■ In addition to the rulings Appellants acknowledge they have chosen not to appeal, Appellants also have not appealed that portion of the trial court's judgment relating to their allegations of procedural due process violations under Article I, Section 10 of the Missouri Constitution. Appellants' brief does not contain any Point Relied On and argument challenging the trial court's ruling with regard to due process. Therefore, Appellants have preserved nothing for our review with regard to their claims relating to procedural due process. *See* Rule 84.04(d) and (e); *Duncan–Anderson v. Duncan,* 321 S.W.3d 498, 500 (Mo.App. E.D.2010) (failure to comply with Rule 84.04(e) preserves nothing for review).

■ Likewise, Appellants do not appeal that portion of the trial court's judgment declaring that the Ordinance does not conflict with state law. In their petition, Appellants sought declaratory judgment that the Ordinance conflicts with Sections 304.271[4] and 304.281, Missouri's statutes governing red light violations, as well as Sections 302.225, 302.302, and 302.010(12), Missouri's statutes governing the assessment of points for moving violations. In its judgment, the trial court noted that *Nottebrok* "upheld the Ordinance under an identical challenge" and found that the Ordinance did not conflict with state law. However, the challenge in *Nottebrok* was limited to a discussion of the assessment of

points for moving violations under Section 302.302. Neither *Nottebrok* nor the trial court in its judgment addressed whether the Ordinance conflicts with Sections 304.271 and 304.281. Nevertheless, Appellants do not challenge in this appeal the trial court's failure to address Sections 304.271 and 304.281 or the trial court's judgment holding the Ordinance does not conflict with state law. Appellants have not preserved the issue of conflict with state law for appeal.

This court's review on appeal is limited to those issues properly preserved and raised under Rule 84.04. Because Appellants have not appealed the trial court's judgment as to Counts III, IV, and V, as well as Count I as it relates to the Ordinance's constitutionality and conflict with state law, those portions of the trial court's judgment are affirmed. *See Schneider v. Sw. Bell Tel. Co.,* 413 S.W.2d 16, 19 (Mo. App.St.L.1967). We now address those limited points that have been preserved and presented for our review.

## I. The trial court did not err in dismissing the Arnolds' and Baur's claims for declaratory and equitable relief because they have an adequate remedy at law.

We first address Appellants' second point on appeal, which posits that the trial court erred in dismissing Ballard's constitutional claims on the grounds of lack of standing, waiver, and estoppel, and that the trial court also erred in dismissing the Arnolds' and Baur's claims for declaratory and equitable relief because they have an adequate remedy at law.

### A. *Ballard*

■ As previously noted, Appellants have not preserved for appellate review

---

4. All statutory references are to RSMo. Cum. Supp. (2011).

the constitutional issues raised in their petition and addressed by the trial court. Because Appellants do not appeal the substantive rulings and judgment of the trial court on their constitutional claims, the issue of whether the trial court erred in dismissing Ballard's constitutional claims on the bases of standing, waiver, and estoppel is now moot. "A cause of action is moot when the question presented for decision seeks a judgment upon some matter which, if the judgment was rendered, would not have any practical effect upon any then existing controversy." *Lucas v. Lucas*, 307 S.W.3d 712, 714 (Mo.App.E.D. 2010) (quoting *Reynolds v. City of Valley Park*, 254 S.W.3d 264, 266 (Mo.App.E.D. 2008)). Even if we were to determine the trial court erred in holding Ballard could not raise her constitutional claims due to the doctrines of standing, waiver, and estoppel, our holding would have no practical effect on the existing case because Appellants do not challenge the trial court's substantive dismissal of Ballard's constitutional claims. Accordingly, we will not address whether the trial court erred when it dismissed Ballard's constitutional claims based on standing, waiver, and estoppel.

### B. *Arnolds and Baur*

██ Having resolved the issue raised by Ballard in this point on appeal, we now consider whether the trial court properly dismissed the Arnolds' and Baur's claims for declaratory and injunctive relief. In its judgment, the trial court found that declaratory judgment and injunctive relief are equitable remedies, and that a court lacks authority to issue an equitable remedy if an adequate remedy at law exists. The trial court then reasoned that because Missouri law provides that a city's municipal court has jurisdiction over an alleged violation of a city ordinance, and because alleged violators have a right to a trial *de novo* before an associate circuit or circuit judge, the Arnolds and Baur had an adequate remedy at law by pursuing their claims in Creve Coeur Municipal Court. The trial court, therefore, dismissed the Arnolds' and Baur's claims in Counts I, III, IV, and V. On appeal, Appellants assert that the Arnolds and Baur do not have an adequate remedy at law because they face multiple prosecutions under the Ordinance. We disagree with Appellants' arguments and hold that the trial court correctly dismissed these claims.

██ An injunction and declaratory judgment are equitable remedies. *Purcell v. Cape Girardeau County Com'n*, 322 S.W.3d 522, 524 (Mo. banc 2010). As this Court recently noted in *Unverferth v. City of Florissant*, equitable relief is warranted only where the legal remedies available to a plaintiff are inadequate or incomplete. *See Unverferth v. City of Florissant*, 419 S.W.3d 76, 92–93, 2013 WL 4813851, at *10 (Mo.App.E.D.2013) (citing *Home Shopping Club, Inc. v. Roberts Broad. Co.*, 989 S.W.2d 174, 180 (Mo.App.E.D.1998)). "The mere invalidity of a municipal ordinance is not alone sufficient ground for enjoining its enforcement." *Bhd. of Stationary Engineers v. City of St. Louis*, 212 S.W.2d 454, 458 (Mo.App.St.L.1948). Rather, a plaintiff asserting that a municipal ordinance is invalid has an adequate remedy at law by raising the invalidity as a defense to the proceeding against him or her in municipal court. *Id.* To warrant the intervention of a court of equity, the plaintiff must show that enforcement of the ordinance would deprive him or her of property rights without adequate redress by legal remedy, or that injunctive relief is required to prevent a multiplicity of actions for violating the ordinance. *Id.*

Here, the Arnolds and Baur assert that they have no adequate remedy at law because they presently face prosecution un-

der the Ordinance and such prosecution is capable of repetition in the future. The Arnolds and Baur claim that the "multiplicity of actions" exception applies because requiring each prospective plaintiff in this purported class action, let alone each person driving through Creve Coeur, to challenge the Ordinance in municipal court "each and every time they are cited" would subject them to a multiplicity of proceedings. Therefore, the available legal remedy, a hearing in municipal court, is inadequate because plaintiffs will be subjected to multiple prosecutions.

As we found in *Unverferth,* the Arnolds' and Baur's argument conflates a multiplicity of actions against one plaintiff with a multiplicity of actions against a large number of plaintiffs. *Unverferth,* 419 S.W.3d at 92–93, 2013 WL 4813851, at *10. Appellants and the class of plaintiffs they seek to represent are only subject to multiple prosecutions if they continue to violate the Ordinance. These facts alone do not constitute a multiplicity of actions as contemplated by Missouri courts. *Compare Jackson v. City of Kansas City,* 601 S.W.2d 681, 682 (Mo.App.W.D.1980) (plaintiff did not face multiplicity of actions when he had been arrested only one time and the facts in the case merely showed that the city intended to enforce the ordinance) *with Brotherhood of Stationary Engineers v. City of St. Louis,* 212 S.W.2d 454, 458 (Mo.App.St.L.1948) (plaintiffs were subjected to a multiplicity of actions when ordinance required them to hold a special license to perform their jobs and they were threatened with arrest each day they were found to be working in violation of the ordinance).

The Arnolds and Baur have failed to prove that enforcement of the Ordinance has or will subject them and the purported class they represent to a multiplicity of proceedings. The Arnolds and Baur are entitled to a hearing in municipal court, as well as a trial *de novo* in associate circuit or circuit court. There they can present their challenges to the Ordinance. Because they have an adequate remedy at law, the trial court did not err in dismissing the Arnolds' and Baur's claims under Counts I, III, IV, and V.[5] Point two is denied.

## II. Creve Coeur has authority to enact traffic regulating ordinances under its police power, but Ballard is entitled to discovery on the issue of revenue generation.

In her first point on appeal, Ballard argues that the trial court erred in declaring that her causes of action failed because, she claims, the Ordinance is invalid. Specifically, Ballard alleges that the Ordinance is an invalid exercise of police power, not validly enacted under Creve Coeur's statutory authority to enact ordinances, and is solely a revenue-generating measure.

*A. Creve Coeur has authority to enact ordinances regulating traffic as an exercise of its police power because traffic regulation is rationally related to public safety and welfare.*

Ballard first claims that the Ordinance is an invalid exercise of Creve Coeur's police power because the regulation of "non-moving, non-obstructive vehicular presence by a non-driver" has no rational or substantial relationship to public safety. Ballard bases her argument on a misguided reading of this Court's opinion in *Nottebrok.*

■■■ A city's police power is "the power inherent in a government to enact

---

remainder of the opinion will solely address the points on appeal with regard to Ballard.

laws, within constitutional limits, to promote the order, safety, health, morals, and general welfare of society." *Engelage v. City of Warrenton*, 378 S.W.3d 410, 414 (Mo.App.E.D.2012). A city has no inherent police power but rather enjoys only that police power conferred to it by a specific delegation by the state. *Id.* "With regard to traffic control, the State of Missouri has granted municipalities the authority to exercise its police power in making 'additional rules of the road or traffic regulations to meet their needs and traffic conditions' as long as the ordinance's provisions are consistent with and do not conflict with state law." *Smith*, 409 S.W.3d at 415 (citing Section 304.120; *City of Creve Coeur v. Nottebrok*, 356 S.W.3d 252, 261 (Mo.App.E.D.2011)). However, even where a municipality is granted authority to enact an ordinance pursuant to its police power, the ordinance must still have a rational relationship to the health, safety, peace, comfort, and general welfare of the inhabitants of the municipality, and it must conform with state law on the same subject. *See Bezayiff v. City of St. Louis*, 963 S.W.2d 225, 229 (Mo.App.E.D.1997); Section 71.010.

In *Nottebrok*, we addressed a challenge to the validity of Creve Coeur's red light camera ordinance on grounds other than those presented here. In *Nottebrok*, the appellant argued that the Ordinance conflicted with Section 302.302, Missouri's statute governing the assessment of points against drivers' licenses for moving violations. *Id.* at 261. This Court noted that Creve Coeur was entitled to enact the Ordinance "as long as [its] provisions were consistent with and did not conflict with state law." We then held that the Ordi-

nance did not conflict with Section 302.302 because the plain language of the Ordinance indicated that Creve Coeur intended a violation of the Ordinance to be a non-moving violation. *Id.* at 262. In so holding, we reasoned that the Ordinance did not prohibit "running a red light," but rather the *presence* of a vehicle in an intersection when the traffic signal was emitting a steady red signal. *Id.*

Ballard now asserts that our holding in *Nottebrok* supports her claim that the Ordinance is not a valid exercise of Creve Coeur's police power, and therefore, void. Ballard contends that because the Ordinance does not conflict with Section 302.302, the Ordinance logically regulates only vehicles that are not in motion at the time of the violation. Ballard also contends that because *Nottebrok* determined the Ordinance does not conflict with state law, the Ordinance may not lawfully regulate vehicular obstruction of traffic at an intersection, because the Ordinance would then conflict with the maximum fine permitted by Section 304.151.[6] Ballard further reasons that because the Ordinance imposes strict liability on vehicle owners, the Ordinance regulates only non-drivers of the vehicle. Thus, Ballard concludes that the Ordinance only prohibits non-moving, non-obstructive vehicular presence in an intersection by a non-driver. Ballard then suggests that such a limited application bears no rational or substantial relationship to public safety because a non-driver who is not moving a vehicle and not obstructing traffic cannot rationally be said to pose a danger to traffic passing through an intersection. We are not persuaded by Ballard's limited and tortuous construction of the Ordinance.

---

6. Section 304.151 provides for a fine of not less than ten and not more than fifty dollars for obstructing the regular flow of traffic on a state highway. Ballard's argument regarding Section 304.151 was never presented to the trial court and, thus, is not preserved for appellate review.

We first note that while *Nottebrok* held Creve Coeur's enactment of the Ordinance was consistent with and did not conflict with state law, *Nottebrok's* holding is limited to the Ordinance's alleged conflict with Section 302.302. *Id.* The appellant in *Nottebrok* did not raise the issue of any conflict between the Ordinance and Section 304.151. Likewise, Ballard did not present any argument regarding Section 304.151 to the trial court. Ballard's contention that the Ordinance may not lawfully regulate vehicular obstruction in an intersection, in addition to being unpreserved on appeal, is unsupported by *Nottebrok.*

■ Moreover, we are not persuaded by Ballard's argument that the Ordinance's application is limited to the rare situation where a vehicle, on its own, falls off of an overpass into an intersection without obstructing traffic, and therefore is not a valid exercise of Creve Coeur's police powers. One possible application of the Ordinance is the regulation of owner-drivers whose vehicles are present in an intersection—possibly obstructing traffic—while the traffic signal is emitting a steady red light. As we noted in *Smith v. City of St. Louis,* a red light camera ordinance that reduces the dangerousness of intersections by targeting vehicles that violate traffic regulations is rationally and substantially related to the health, safety, peace, comfort, and general welfare of the public, and is a valid exercise of a city's police power. *Smith v. City of St. Louis,* 409 S.W.3d 404 (Mo.App.E.D.2013). The burden is on Ballard to negate every conceivable basis that might support the Ordinance. *Bezayiff,* 963 S.W.2d at 229.

We also note this Court has already determined that the Ordinance bears a rational relationship to public safety. In *Nottebrok,* this Court found that the Ordinance was enacted pursuant to Creve Coeur's police power for regulating public safety. *Id.* at 259. In *Nottebrok,* we cited Creve Coeur's declaration that the Ordinance's purpose was to protect the " 'public health, safety, and welfare of the citizens' " of Creve Coeur, and the city's desire to " 'promote public safety through the implementation of safety programs which are proven to reduce red light violations, including an automated photo traffic enforcement program.' " *Id.* Our holding in *Nottebrok* is consistent with the notion that traffic regulation is rationally and substantially related to public safety and welfare. We decline to disturb *Nottebrok 's* holding that ensuring the safe flow of traffic through an intersection is substantially related to the health, safety, and welfare of the public and may constitute a valid exercise of Creve Coeur's police power.

B. *The Ordinance constitutes an additional rule of the road or traffic regulation that purports to meet a need or traffic condition.*

Ballard next argues that the Ordinance is an invalid exercise of Creve Coeur's police power because it does not constitute an additional rule of the road or traffic regulation that is reasonably related to a need or traffic condition, as required by Section 304.120.

Under Section 304.120, municipalities are authorized to make "additional rules of the road or traffic regulations to meet their needs and traffic conditions." Section 304.120. Ballard argues that Creve Coeur has exceeded its statutory authority under Section 304.120 by enacting a traffic ordinance to regulate a problem that does not exist, namely, non-moving, non-obstructive vehicular presence by a non-driver in an intersection. Ballard claims that there can be no legitimate public safety need to regulate occurrences that are so extraordinary that they could scarcely be embraced as genuine traffic conditions.

As noted in our discussion above, we reject the extreme and narrow parameters that Ballard suggests limit the application of the Ordinance to matters not related to the health, safety, peace, and general welfare of the public. A fair and reasonable reading of the plain language of the Ordinance indicates that the Ordinance regulates vehicular presence in an intersection while the traffic signal is emitting a steady red light. Reducing the danger of roadway intersections by targeting vehicles that are present in an intersection when the traffic signal is emitting a steady red light appears rationally and substantially related to the health, safety, peace, comfort, and general welfare of the public. Such traffic regulation is the type of additional rule of the road Creve Coeur is entitled to enact under Section 304.120, provided that regulation does not conflict with state law [7].

C. *Ballard is entitled to challenge Creve Coeur's purported exercise of police power and to conduct discovery on the issue of revenue generation.*

■ Ballard next claims that the Ordinance is an invalid exercise of Creve Coeur's police power because Creve Coeur's true purpose in enacting the Ordinance is to generate revenue—not to increase safety at intersections. In the petition, Ballard alleged that the Ordinance is merely a revenue-generating scheme designed to generate income based on vehicle ownership alone, as opposed to a legitimate safety measure. Ballard argues that she should be allowed to conduct discovery in order to determine whether a factual basis exists to support her allegations that the Ordinance was created for the unlawful

purpose of generating revenue, and is thus invalid.

Ballard relies on *Automobile Club of Mo. v. City of St. Louis* for the proposition that the amount of revenue generated from an ordinance is an important factor in determining the primary purpose and, therefore, the validity of the ordinance. In *Automobile Club,* the Missouri Supreme Court stated that an ordinance enacted under the police power of a municipality to regulate its traffic may not be a tax ordinance "in the guise of an ordinance enacted under the police power." *Automobile Club of Mo. v. City of St. Louis,* 334 S.W.2d 355, 363 (Mo.1960). "It is for the court to determine, on all the pertinent facts, whether the primary and fundamental purpose of the ordinance is regulation under the police power or revenue under the tax power." *Id.* While the amount of revenue and its purpose are factors the court should use to determine whether the ordinance is primarily a revenue generating measure, it may also consider "other relevant facts that bear on the question of the basic nature of the ordinance." *Id.* Evidence as to the impact of red light camera ordinances on traffic safety may fall among the types of relevant facts that bear on such inquiry.

While Creve Coeur may possess broad authority to enact traffic-related ordinances under its police power, such power is not without limits. *St. Charles Cnty. v. St. Charles Sign & Elec.,* 237 S.W.3d 272, 275 (Mo.App.E.D.2007). Although the party challenging the ordinance bears the burden of proving its invalidity, it is manifestly clear that the party challenging the ordinance should be allowed the opportuni-

---

7. We recognize that the "presence" language found in the Ordinance differs from language found in the red light camera ordinance at issue in *Unverferth* and raises different issues of potential conflict with state law not ad-

dressed in *Unverferth* and also not raised in *Nottebrok.* Because Appellants do not raise issues of conflict between the Ordinance and state law in this appeal, we do not address any such issue.

ty to meet that burden. The issue of whether Creve Coeur enacted the Ordinance as a proper exercise of police power as opposed to an unlawful revenue-generating tax measure that falls outside of its police power authority is a fact question that is inappropriate for resolution on a motion to dismiss. Notably, Appellants' allegations of unseemly revenue generation that undermine the alleged public safety and welfare purpose of the Ordinance were neither raised nor addressed in *Nottebrok.* Ballard has alleged in her petition that Creve Coeur's purpose in enacting the Ordinance was simply to generate revenue based on vehicle ownership rather than keep dangerous drivers off of the road. Ballard further alleged that red light cameras increase accidents at intersections rather than making them safer. While we acknowledge that Ballard bears a heavy burden in overcoming the presumption favoring the validity of the Ordinance, she is entitled to the opportunity to support her allegations with facts developed through discovery and presented to the trial court. *See Unverferth,* 419 S.W.3d at 95–96, 2013 WL 4813851, at *13.

We reverse the trial court's judgment declaring that the Ordinance was properly enacted pursuant to Creve Coeur's police power for regulating public safety and the trial court's dismissal of Count I. We remand this matter to the trial court for proceedings consistent with this opinion, which includes allowing the parties the opportunity to develop, through discovery, evidence relating to the revenue-generation allegations set forth in the petition. Point one is granted solely with regard to Ballard's revenue-generation claim.

### III. The trial court did not err in dismissing Ballard's claims for unjust enrichment because she voluntarily paid the $100 fine.

◼ In her final point on appeal, Ballard claims that the trial court erred in dismissing her claims for unjust enrichment because she properly pleaded the elements of unjust enrichment and her claims are not barred by the voluntary payment doctrine. We disagree. Even if on remand the trial court were to find that the Ordinance was enacted for the unlawful purpose of revenue generation rather than the legitimate purpose of regulating public safety, Ballard is not entitled to restitution.

In its judgment, the trial court dismissed Ballard's unjust enrichment claims against Creve Coeur and ATS for four reasons. First, the trial court held that Ballard failed to state a claim of unjust enrichment against ATS because she did not allege in the petition that any benefit was directly conferred by her to ATS. Rather, the only benefits that ATS received were from Creve Coeur as a result of their contractual relationship. Second, the trial court held that Ballard failed to allege unjust circumstances regarding Creve Coeur's enactment and enforcement of the Ordinance when the Ordinance was validly enacted, consistent with state statutes, and constitutional. Third, the trial court held that the voluntary payment doctrine barred Ballard from receiving restitution. Finally, the trial court held that Section 432.070 prevents contracts implied-in-law from being enforced against Creve Coeur; therefore, Ballard's claim of unjust enrichment against Creve Coeur must fail. Ballard now appeals each of these determinations under one point on appeal. Because we hold the voluntary payment doctrine precludes Ballard from receiving restitution, we do not address the remainder of Ballard's unjust enrichment claims.

◼ Unjust enrichment occurs when the plaintiff confers a benefit on the

defendant under circumstances in which retention of that benefit without paying its reasonable value would be inequitable or unjust. *Pitman v. City of Columbia*, 309 S.W.3d 395, 402 (Mo.App.W.D.2010). However, Missouri courts have consistently recognized the voluntary payment doctrine as a defense to a claim for restitution due to unjust enrichment. *See Smith*, 409 S.W.3d at 419. Even when the elements for a claim of unjust enrichment are met, if a plaintiff has voluntarily paid money with full knowledge of all of the facts in the case, he or she cannot then recover the payment. *Huch v. Charter Commc'n, Inc.*, 290 S.W.3d 721, 726 (Mo. banc 2009); *Smith*, 409 S.W.3d at 419. "[W]here money has been voluntarily paid with full knowledge of the facts it cannot be recovered on the ground that the payment was made ... under a mistake of law." *Am. Motorists Ins. Co. v. Shrock*, 447 S.W.2d 809, 811 (Mo.App.K.C.1969). "A mistake of law occurs where a person is truly acquainted with the existence or nonexistence of facts, but is ignorant of, or comes to an erroneous conclusion as to, their legal effect." *Id.* The voluntary payment doctrine prevails even if there was no liability to pay in the first instance and the payor makes the payment under the false impression that the demand was legal. *Id.* at 811–12.

In her petition, Ballard alleged that she "paid the fine under the reasonable, but mistaken, belief that the Ordinance was valid." As this Court noted in both *Smith* and *Unverferth*, "a mistake as to the validity and enforceability of an Ordinance is an issue of law." *Smith*, 409 S.W.3d at 420; *Unverferth*, 419 S.W.3d at 107, 2013 WL 4813851, at *25. Although Ballard argues that the voluntary payment doctrine is always a question of fact and cannot support a motion to dismiss, Ballard's admission that her mistake was one of law precludes any application of the mistake of fact ex-

ception to the voluntary payment doctrine. *See Unverferth*, 419 S.W.3d at 107, 2013 WL 4813851, at *25.

■ Ballard also claims that even if this Court finds she paid her fine under a mistake of law, recovery is allowed for money paid under mistake of law when the mistake is induced or accompanied by inequitable conduct by the other party. However, municipalities are entitled to presume that their laws are constitutional and thus enforceable. *See Cmty. Fed. Sav. & Loan Ass'n v. Dir. of Revenue*, 752 S.W.2d 794, 797 (Mo. banc 1988). As a result, no inequitable conduct occurred when Creve Coeur enforced its Ordinance and sent a violation notice to Ballard.

Ballard further attempts to blur the distinction between mistake of fact and mistake of law, citing *Western Cas. & Sur. Co. v. Kohm*, 638 S.W.2d 798, 800 (Mo.App. E.D.1982) and *Handly v. Lyons*, 475 S.W.2d 451, 462 (Mo.App.K.C.1971). As we noted in *Unverferth*, neither of those cases outright rejects the mistake of fact/mistake of law distinction. *See Unverferth*, 419 S.W.3d at 107, 2013 WL 4813851, at *25; *Handly*, 475 S.W.2d at 462; *Kohm*, 638 S.W.2d at 800 ("This does not mean that the traditional analysis is irrelevant. It is still necessary to consider the nature of the mistake, the circumstances under which it was made, the conduct of the payee, and so on, insofar as these factors indicate whether it would be 'unjust' to permit retention of the benefit.").

■ Ballard next claims that the voluntary payment doctrine does not apply because she paid the fine under duress. In the petition, Ballard alleged that she involuntarily paid the fine because Creve Coeur threatened to arrest and imprison her should she fail to pay. However, nothing in Ballard's Notice of Violation indicates

that she would be arrested for failing to pay the fine. Rather, the Notice of Violation states that failure to pay the fine or otherwise respond as directed will result in a Notice to Appear in municipal court. In fact, the Ordinance itself expressly provides that "under no circumstances may a person be imprisoned for such an infraction [of the Ordinance]." Moreover, Missouri courts do not recognize the threat of legitimate legal process as duress because the party threatened is entitled to plead and prove that he is not liable. *Smith*, 409 S.W.3d at 420 (citing *Sch. Dist. of Kansas City, Missouri v. Missouri Bd. of Fund Com'rs*, 384 S.W.3d 238, 275 (Mo.App.W.D. 2012)). "[I]t is not duress to do, or threaten to do, what one has a right to do." *Slone v. Purina Mills, Inc.*, 927 S.W.2d 358, 371 (Mo.App.W.D.1996). Just as we held in *Smith* and *Unverferth*, we hold that Creve Coeur was entitled to pursue legal action against Ballard if she failed to respond to the Notice of Violation and subsequent Notice to Appear in municipal court. *See Cmty. Fed. Sav. & Loan Ass'n*, 752 S.W.2d at 797 ("Governments are entitled to presume that statutes are constitutional.").

Ballard finally asserts that the voluntary payment doctrine does not apply because she did not voluntarily pay the fine with full knowledge of all of the relevant facts. Ballard claims that the Notice of Violation did not contain a court date or instructions on how to obtain a hearing prior to the due date of the fine. Rather, the Notice of Violation only instructed the recipient on how to plead a recognized exception to the Ordinance, and provided that failure to pay the fine or otherwise respond would result in a Notice to Appear in municipal court. We are not persuaded that the information provided on the Notice of Violation somehow correlates to Ballard's alleged lack of knowledge of the facts pertinent to the alleged violation. The Notice of Violation informed Ballard of factual allegations underlying the violation as well as her options: pay the fine, plead a recognized exception, or do not pay the fine and receive a court date. Ballard chose the first option and paid the fine. Ballard cannot now seek recovery of the fine she voluntarily paid—not because she lacked knowledge of the facts relating to the alleged violation, but because of her mistaken belief that the Ordinance was valid.

Because the voluntary payment doctrine denies Ballard restitution of the fine she paid, whether she could state a claim for unjust enrichment against both Creve Coeur and ATS is moot. Point three is denied.

*Conclusion*

We affirm the trial court's judgment dismissing the claims of the Arnolds and Baur in Counts I, III, IV, and V because they have an adequate remedy at law in their municipal court proceeding. Because Ballard has not preserved any constitutional issues for appeal, we need not determine whether the trial court erred in dismissing her claims on the bases of standing, waiver, and estoppel. Furthermore, because Appellants have not appealed the trial court's judgment as to Counts III, IV, and V, as well as Count I as it relates to the Ordinance's constitutionality and conflict with state law, those portions of the trial court's judgment are affirmed. With regard to Ballard's claim that the Ordinance is an invalid exercise of Creve Coeur's police power for regulating public safety, we reverse the trial court's judgment dismissing Count I of the petition and declaring the Ordinance valid. We remand this issue for further proceedings consistent with this opinion, including discovery related to the issue of whether the Ordinance is a valid exercise of Creve Coeur's police power or an unlawful revenue-

generating measure. Finally, we affirm the trial court's judgment dismissing Ballard's claims for unjust enrichment and restitution under Counts II and VI.

LAWRENCE E. MOONEY, P.J., Dissents, CLIFFORD H. AHRENS, J., Concurs.

LAWRENCE E. MOONEY, Presiding Judge.

To the extent that the majority's opinion does not find a conflict between Creve Coeur's ordinance and state law, I respectfully dissent.

Cities may enact additional rules of the road only as long as they are consistent with and do not conflict with state law. Section 304.120 RSMo. (Supp.2012). I would hold that the city's ordinance conflicts with state law.

Creve Coeur has made a car's "presence" in an intersection illegal and charges the registered vehicle owner with responsibility for that misdeed. Why might a city create such a novel offense? Perhaps the city did not wish to run afoul of the state statute that imposes liability for running a red light only on the driver, and not the car's registered owner. Maybe, the city realized that a normal red-light offense is a moving violation, and it would have to report violations to the Director of Revenue for the assessment of points. Perhaps the city wished to analogize this offense to a mere parking offense because our Supreme Court, in a somewhat dated precedent, allowed the use of a presumption that the registered owner was the car's driver in the case of a parking offense. Whatever motivated Creve Coeur's creative codification, the ordinance conflicts with state law.

The ordinance conflicts with the rules of the road and evades the point system established by the Missouri legislature. It seeks to transform a moving violation of state law into a nonmoving parking-type offense. This of course, compromises the integrity of Missouri's point system. Companies that employ professional drivers rely upon the integrity of that system to employ safe drivers. Insurance companies rely on it to properly apportion risk. Far from advancing public safety, Creve Coeur's ordinance may undercut it.

I disagree with this Court's prior opinion in *City of Creve Coeur v. Nottebrok*, 356 S.W.3d 252 (Mo.App.E.D.2011). It seems to countenance the imaginative drafting that led to the construction of Creve Coeur's ordinance. Particularly when confronting matters of public safety, courts should skeptically scrutinize manufactured legal fictions that may obscure the actual danger confronted. Fortunately, what fictions lawyers can construct, our Supreme Court can deconstruct.